# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| NEBRA SIMPSON, | ) | CASE NO. 5:20-cv-1237 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| JOHNSON & JOHNSON, et. al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Nebra Simpson ("Simpson" or "plaintiff") began this action by filing a Short Form Complaint against Johnson & Johnson and Ethicon, Inc. (collectively, "defendants")[1] as part of multidistrict litigation (MDL 2327) assigned to the United States District Court for the Southern District of West Virginia. (Doc. No. 25, Memorandum in Opposition to Motion for Partial Summary Judgment ["Opp'n"] at 1252[2]; Doc. No. 31, Transfer Order ["Transfer Order"] at 1327.)[3]

Now before the Court is defendants' motion for partial summary judgment. (Doc. Nos. 22 & 23 ["Mot."].) Defendants seek summary judgment as to the following claims: Negligence (Count I), Strict Liability – Manufacturing Defect (Count II), Strict Liability – Defective Product (Count IV), Common Law Fraud (Count VI), Fraudulent Concealment (Count VII), Constructive Fraud (Count VIII), Negligent Misrepresentation (Count IX), Negligent Infliction of Emotional

---

[1] Ethicon LLC was also named as a defendant in the Long Form Amended Complaint but was dismissed from the case on June 19, 2020. (Doc. No. 56, Joint Stipulation of Dismissal.)

[2] All page number references are to the page identification number generated by the Court's electronic docketing system.

[3] On June 5, 2020 plaintiff's case was one of nineteen transferred from the Southern District of West Virginia to its appropriate jurisdiction for final resolution pursuant to 28 U.S.C. § 1404(a). (Transfer Order at 1327–28.) The Northern District of Ohio is the appropriate jurisdiction because plaintiff "underwent implantation of [d]efendants' TVT device on July 31, 2009 at Akron General Medical Center" in Akron, Ohio, (Opp'n at 1251), and because plaintiff "has been a resident of Ohio since at least 2007." (Mot. at 1224.)

Distress (Count X), Breach of Express Warranty (Count XI), Breach of Implied Warranty (Count XII), Violation of Consumer Protection Laws (Count XIII), Gross Negligence (Count XIV), and Unjust Enrichment (Count XV). (Mot. at 1223.)

In her opposition brief, plaintiff indicated she will not pursue Counts II, IV, and VI–XVI. (Opp'n at 1254.) Accordingly, the only remaining claim for this Court to address in considering partial summary judgment is Negligence (Count I).

For the reasons detailed below, defendants' motion for partial summary judgment is granted in part and denied in part.

**I.     BACKGROUND**

This case arises from the surgical implantation of defendants' pelvic mesh device, the TVT, in the plaintiff in 2009. (Mot. at 1224 [citing Doc. 22-1, Plaintiff Fact Sheet ["Fact Sheet"] at 4].) Defendants Johnson & Johnson and Ethicon, Inc., a wholly owned subsidiary of Johnson & Johnson, designed, manufactured, marketed, advertised, promoted, and sold TVT. (Doc. No. 32-1, Long Form Complaint ["Long Compl."] at ¶¶ 3–5, 7.)

Plaintiff makes three allegations of negligence, as follows:

> 91. Defendants breached their duty of care and were negligent as described herein in the design, manufacture, labeling, warning, instruction, training, selling, marketing, and distribution of the Pelvic Mesh Products in one or more of the following respects: a. Failing to design the Products so as to avoid an unreasonable risk of harm to women in whom the Products were implanted, including Plaintiff[]; b. Failing to manufacture the Products so as to avoid an unreasonable risk of harm to women in whom the Products were implanted, including Plaintiff[]; c. Failing to use reasonable care in the testing of the Products so as to avoid an unreasonable risk of harm to women in whom the Products were implanted, including Plaintiff[]; d. Failing to use reasonable care in inspecting the Products so as to avoid unreasonable risk of harm to women in whom the Products were implanted, including Plaintiff[]; e. Failing to use reasonable care in training its employees and health care providers related to the use of the Products so as to avoid unreasonable risk of harm to women in whom the

2

>Products were implanted, including Plaintiff[]; f. Failing to use reasonable care in instructing and/or warning health care providers, the FDA and the public as set forth herein of risks associated with the Products, so as to avoid unreasonable risk of harm to women in whom the Products were implanted, including Plaintiff[]; g. Failing to use reasonable care in marketing and promoting the Products, so as to avoid unreasonable risk of harm to women in whom the Products were implanted, including Plaintiff[]; h. In negligently and carelessly promoting the use of the Pelvic Mesh Products to physicians who had not received sufficient training to master the techniques necessary for implantation of the device into the Plaintiff[]; i. Otherwise negligently or carelessly designing, manufacturing, marketing, distributing, warning, labeling studying, testing or selling the Pelvic Mesh Products."
>
>92. [Defendants] [f]ailed to conduct post-market vigilance, or surveillance, by: a. Monitoring or acting on findings in the scientific and medical literature; and b. Monitoring or investigating and evaluating reports in the FDA adverse event databases for their potential significance for defendants' Pelvic Mesh Products.
>
>93. [Defendants] [f]ailed to comply with manufacturer requirements of the Medical Device Reporting (MDR) Regulations, specifically: a. Failed to report MDRs (Medical Device [adverse event] Reports); and b. Failed to investigate reports of serious adverse events.

(Long Compl. ¶¶ 91–93.)

Plaintiff seeks compensatory damages related to personal injuries and health and medical care costs; restitution and disgorgement of profits; reasonable attorneys' fees; legal costs; all ascertainable economic damages; and punitive damages. (*Id*. at 1400–01.)

## II. STANDARD OF REVIEW

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

>A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record …; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases a court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict[.]" *Id.* at 252.

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. *Banks v. Wolfe Cty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (concluding that summary judgment is appropriate whenever the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). In

4

other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003). Rule 56 further provides that "[t]he court need consider only" the materials cited in the parties' briefs. Fed. R. Civ. P. 56(c)(3); s*ee also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988))).

Under this standard, the mere existence of some factual dispute will not frustrate an otherwise proper summary judgment motion. *Dunigan v. Noble*, 390 F.3d 486, 491 (6th Cir. 2004) (quotation marks omitted) (citing *Anderson*, 477 U.S. at 247–48). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

### III. LAW AND ANALYSIS

Because the Court is sitting in diversity, Ohio substantive law applies. *See, e.g., Reid v. Volkswagen of Am., Inc.*, 575 F.2d 1175, 1176 (6th Cir. 1978) (per curium) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)).

Under Ohio law, if a plaintiff brings a product liability claim for compensatory damages, that claim is within the purview of the Ohio Product Liability Act ("OPLA").[4] Ohio Rev. Code §

---

[4] OPLA defines "manufacturer" to be "a person engaged in a business to design, formulate, produce, create, make, construct, assemble, or rebuild a product or a component of a product." Ohio Rev. Code § 2307.71(A)(9). It is undisputed that defendants are "manufacturers." And OPLA defines "product" as:

> [A]ny object, substance, mixture, or raw material that constitutes tangible personal property and that … is capable of delivery itself, or as an assembled whole in a mixed or combined state, or as a component or ingredient[,] … is produced, manufactured, or

2307.79(A). If the plaintiff successfully recovers compensatory damages in an OPLA suit, then she may also recover economic losses. *Id.* But if a plaintiff brings a product liability claim and solely alleges economic losses, the claim is not within the purview of OPLA and the plaintiff may pursue economic losses under the common law. *Glazer v. Whirlpool Corp.*, 722 F.3d 838, 856 (6th Cir. 2013); *LaPuma v. Collinwood Concrete*, 661 N.E.2d 714, 716 (Ohio 1996); *In re Nat'l Prescription Opiate Litig.*, No. 1:18-OP-45090, 2018 WL 4895856, at *28 (N.D. Ohio Oct. 5, 2018), *report and recommendation adopted in part, rejected in part*, No. 1:17-MD-2804, 2018 WL 6628898 (N.D. Ohio Dec. 19, 2018); *Meta v. Target Corp.*, 74 F. Supp. 3d 858, 864 (N.D. Ohio 2015).

Here, plaintiff's prayer for relief includes both compensatory damages and economic losses. (Long Compl. at 1400–01; see also Opp'n at 1255–56.) Accordingly, the Court will address both.

### A. Compensatory Damages

Defendants argue that, because "OPLA abrogates 'all common law product liability claims or causes of action,'" OPLA abrogates plaintiff's negligence claim. (Mot. at 1226.) Plaintiff responds that "claims based on other culpable acts and omissions [those other than defective design, defective manufacturing, and failure to warn] remain viable even though asserted in a product liability case." (Opp'n at 1255–56.)

OPLA "abrogate[s] all common law product liability claims or causes of action." Ohio Rev. Code § 2307.71(B). The legislative history of the bill that amended Ohio Rev. Code §

---

supplied for introduction into trade or commerce[,] … is intended for sale or lease to persons for commercial or personal use.

Ohio Rev. Code § 2307.71(A)(12)(a). It is undisputed that TVT is a "product."

6

2307.71(B) provides that: "[T]he amendment … is intended to supersede the holding of the Ohio Supreme Court in [*Carrel v. Allied Prods. Corp.,* 667 N.E.2d 795 (Ohio 1997)], that the common law product liability cause of action of negligent design survives the enactment of the Ohio Product Liability Act, sections 2307.71 to 2307.80 of the Revised Code, and to abrogate all common law product liability causes of action." *Michelson v. Volkswagen Aktiengesellschaft*, 99 N.E.3d 475, 482 (Ohio Ct. App. 2018), *appeal not allowed*, 108 N.E.3d 84 (Ohio 2018); *see also Wimbush v. Wyeth*, 619 F.3d 632, 639 (6th Cir. 2010); *Huffman v. Electrolux N. Am., Inc.,* 961 F. Supp. 2d 875, 879–80 (N.D. Ohio 2013), *on reconsideration sub nom. Huffman v. Electrolux Home Prod., Inc.,* No. 3:12CV2681, 2013 WL 5591939 (N.D. Ohio Sept. 30, 2013).

Courts have consistently held that a common law claim for negligent design, manufacture, inspection and failure to warn are abrogated by Ohio Rev. Code § 2307.71(B). *See e.g.*, *Wimbush*, 619 F.3d at 639; *Tompkin v. Am. Brands,* 219 F.3d 566, 575 (6th Cir. 2000); *Meta,* 74 F. Supp. 3d at 860–61; *Roshong v. Fitness Brands Inc.,* No. 3:10CV2656, 2012 WL 1899696, at *2 (N.D. Ohio May 24, 2012); *Erie Indemn. Co. v. Keurig, Inc.*, No. 1:10–CV–02899, 2011 WL 2893013, at *5 (N.D. Ohio July 15, 2011); *Boroff v. Alza Corp.,* 685 F. Supp. 2d 704, 711 (N.D. Ohio 2010); *Evans v. Hanger Prosthetics & Orthotics, Inc.,* 735 F. Supp. 2d 785, 796 (N.D. Ohio 2010); *Miles v. Raymond Corp.,* 612 F. Supp. 2d 913, 921 (N.D. Ohio 2009); *Wel Companies, Inc. v. Haldex Brake Prod. Corp.,* No. 2:19-CV-912, 2020 WL 3268619, at *2, *8 (S.D. Ohio June 17, 2020); *Hendricks v. Pharmacia Corp.,* No. 2:12-CV-00613, 2014 WL 2515478, at *4 (S.D. Ohio June 4, 2014), *report and recommendation adopted,* No. 2:12-CV-613, 2014 WL 4961550 (S.D. Ohio Oct. 2, 2014); *Bowles v. Novartis Pharm. Corp.,* No. 3:12-cv-145, 2013 WL 5297257, at *7 (S.D. Ohio Sept.19, 2013); *Hempy v. Breg, Inc.,* No. 2:11-CV-900, 2012 WL 380119 at *3 (S.D. Ohio Feb. 6, 2012); *Michelson*, 99 N.E.3d at 481–82; *Parker v. Ace Hardware*, 104 N.E.3d 298, 305,

7

307 (Ohio Ct. App. 2018); *Rodgers v. Genesis Healthcare Sys.*, No. CT2015-0030, 2016 WL 762607, at *7 (Ohio Ct. App. Feb. 24, 2016).

Here, plaintiff alleges defendants were negligent in several ways. The question before the Court, then, is whether each allegation of negligence falls within OPLA's definition of "product liability claim." "[If] the actionable conduct that forms the basis of the negligence claim— negligent research, manufacturing, testing, marketing, and failure to warn—is the same conduct that the OPLA defines as giving rise to a products liability claim," then "the common law negligence actions … are preempted by the OPLA." *Beckemeyer v. Gelco Corp.*, No. 1:17CV695, 2019 WL 952733, at *3 (S.D. Ohio Feb. 27, 2019), *reconsideration denied,* No. 1:17CV695, 2020 WL 515798 (S.D. Ohio Jan. 31, 2020) (quoting *Mitchell v. Proctor & Gamble*, No. 2:09-CV-426, 2010 WL 728222, at *4 (S.D. Ohio Mar. 1, 2010) (quoting *Stratford v. SmithKline Beecham Corp.*, No. 2:07-CV-639, 2008 WL 2491965, at *5 (S.D. Ohio June 17, 2008))).

OPLA defines a "product liability claim" as:

> [A] claim or cause of action pursuant to sections 2307.71 to 2307.80 of the [Ohio] Revised Code and that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question, that allegedly arose from any of the following: (a) The design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product; (b) Any warning or instruction, or lack of warning or instruction, associated with that product; (c) Any failure of that product to conform to any relevant representation or warranty.

Ohio Rev. Code § 2307.71(A)(13). The chart below demonstrates that each of plaintiff's allegations corresponds to a category of claim specified in the OPLA definition of product liability claim. Accordingly, all of the common law allegations are abrogated by OPLA.

8

| **Plaintiff's Claim** (Long Compl. at ¶¶ 92–94.) | **Product Liability Claim** |
|---|---|
| Failing to design the Products so as to avoid an unreasonable risk of harm to women in whom the Products were implanted, including Plaintiff[]; | Design |
| Failing to manufacture the Products so as to avoid an unreasonable risk of harm to women in whom the Products were implanted, including Plaintiff[]; | Production |
| Failing to use reasonable care in the testing of the Products so as to avoid an unreasonable risk of harm to women in whom the Products were implanted, including Plaintiff[]; | Testing |
| Failing to use reasonable care in inspecting the Products so as to avoid unreasonable risk of harm to women in whom the Products were implanted, including Plaintiff[]; | Testing, Warning |
| Failing to use reasonable care in training its employees and health care providers related to the use of the Products so as to avoid unreasonable risk of harm to women in whom the Products were implanted, including Plaintiff[]; | Instructing, Warning |
| Failing to use reasonable care in instructing and/or warning health care providers, the FDA and the public as set forth herein of risks associated with the Products, so as to avoid unreasonable risk of harm to women in whom the Products were implanted, including Plaintiff[]; | Instructing, Warning |
| Failing to use reasonable care in marketing and promoting the Products, so as to avoid unreasonable risk of harm to women in whom the Products were implanted, including Plaintiff[]; | Marketing, Promoting |
| In negligently and carelessly promoting the use of the Pelvic Mesh Products to physicians who had not received sufficient training to master the techniques necessary for implantation of the device into the Plaintiff[]; | Marketing, Promoting |
| Otherwise negligently or carelessly designing, manufacturing, marketing, distributing, warning, labeling studying, testing or selling the Pelvic Mesh Products. | Design, Construction, Marketing, Promoting, Instructing, Warning |
| Failed to conduct post-market vigilance, or surveillance, by … [m]onitoring or acting on findings in the scientific and medical literature; and | Instructing, Warning |
| Failed to conduct post-market vigilance, or surveillance, by … [m]onitoring or investigating and evaluating reports in the FDA adverse event databases for their potential significance for defendants' Pelvic Mesh Products. | Warning |
| Failed to report MDRs (Medical Device [adverse event] Reports); | Instructing, Warning |
| Failed to investigate reports of serious adverse events. | Instructing, Warning |

9

However, in *Sylvester v. Ethicon, Inc.,* No. 1:19CV2658, 2020 WL 1308738 (N.D. Ohio Mar. 19, 2020), a case remanded from MDL 2327 and assigned to another judge of this court, the court held that three of the allegations were not abrogated by OPLA: defendants' failure "to train their employees and healthcare providers related to the use of the Products, … to monitor or act on findings in the scientific and medical literature[,] and … to monitor or investigate and evaluate reports from the FDA." *Id.* at *4.

Here, the Court disagrees with *Sylvester*, *supra*, and holds that these three allegations are abrogated by OPLA. As noted in the chart, these three claims are included in the failure to instruct and warn. That a manufacturer did not properly train particular individuals how to use the product amounts to a failure to instruct. And that a manufacturer, once the product was sold, did not continue to monitor the product's performance and relevant medical findings in order to inform consumers of potential problems with the product amounts to a failure to warn.

Similarly, in *Miles v. Raymond Corp.,* 612 F. Supp. 2d 913 (N.D. Ohio 2009), this Court held that when the "duties [d]efendants owed based upon the factual allegations in the complaint relate exclusively to their involvement with the … product[,] … any common law claims arising out of those factual allegations are product liability claims—not … general negligence claims." *Id.* at 922. For that reason, the Court determined plaintiffs could not pursue a common law negligence claim by alleging "liability … based exclusively on Defendants' conduct as opposed to any alleged defect of their product." *Id.* at 921 (record citation omitted). *See also Paugh v. R.J. Reynolds Tobacco Co.,* 834 F. Supp. 228, 230 (N.D. Ohio 1993) (holding that an allegation that a producer "was negligent in the manner in which it tested, researched, sold and promoted the cigarettes" was controlled by OPLA); *Stratford v. SmithKline Beecham Corp.,* No. 2:07-CV-639, 2008 WL 2491965, at *4, *6 (S.D. Ohio June 17, 2008) (holding that a negligent research claim is abrogated

10

by OPLA and that a negligence claim based on a failure to "test a product and inform physicians, regulatory agencies, and public about new information may be" included in OPLA pursuant to Ohio Rev. Code. § 2307.76(A)(2)(b)).

Finally, plaintiff's reliance on *Fulgenzi v. PLIVA, Inc.,* 867 F. Supp. 2d 966 (N.D. Ohio 2012), *rev'd on other grounds*, 711 F.3d 578 (6th Cir. 2013) is misplaced. In *Fulgenzi*, the Court expressly recognized that the amendment to Ohio Rev. Code § 2307.71(B) "eliminated common law torts as an avenue for relief from injuries suffered from allegedly defective products." *Id.* at 972. And the Court held "[p]laintiff's common law tort claims [including negligence] are abrogated by the OPLA." *Id.*

### B. Economic Losses

Plaintiff argues that her claim for economic losses may be brought as a common law negligence claim. (Opp'n at 1256.) Ohio courts are divided as to how to evaluate an action that alleges both a common law negligence claim seeking economic losses and an OPLA claim seeking compensatory damages.[5]

Some courts have held that the claims can be bifurcated: the compensatory damages claim may be abrogated by OPLA and the economic losses claim may be pursued under common law. For example, in *Huffman v. Electrolux N. Am., Inc.,* 961 F. Supp. 2d 875, 881–82 (N.D. Ohio 2013), *on reconsideration sub nom. Huffman v. Electrolux Home Prods., Inc.*, No. 3:12CV2681, 2013 WL 5591939 (N.D. Ohio Sept. 30, 2013), the court held that the plaintiff could pursue both claims in a single suit because prohibiting it would "require plaintiffs to choose between a

---

[5] In an OPLA suit, recovery of economic losses is contingent on recovery of compensatory damages. Ohio Rev. Code § 2307.79(A).

relatively certain recovery of economic loss damages and the possible recovery of compensatory damages plus economic loss damages," which contradicts Fed. R. Civ. P. 8(d)(2), allowing a plaintiff to plead in the alternative. *Id.* at 881–82.

The court adopted this reasoning in *Dates v. Ethicon, Inc.,* No. 2:20-CV-2187, 2020 WL 3265537 (S.D. Ohio June 17, 2020), another remanded case from MDL 2327. *Id.* at *3. In *Dates*, the court reasoned that OPLA abrogates a common law product liability case where the plaintiff seeks only compensatory damages. *Id.* at *2. But OPLA does not abrogate a common law negligence claim where the plaintiff seeks economic losses, even when it is alleged in the same claim as an OPLA claim for compensatory damages. *Id.* at *2. That is because a claim for economic losses is not considered a "product liability claim" under OPLA. *Id.* Accordingly, the court held that plaintiff could "pursue her common law negligence claim, although she may only recover economic loss damages." *Id.* at *3.

Likewise in *Great N. Ins. Co. v. BMW of N. Am. LLC,* 84 F. Supp. 3d 630 (S.D. Ohio 2015), the court held that "plaintiffs are permitted to argue in the alternative, and bring their OPLA claims for compensatory damages, and their common law implied warranty claim for purely economic damages, under the same set of facts." *Id.* at 649. *See also Johnson v. Wal-Mart Stores E. Inc.,* No. 4:17CV1894, 2018 WL 1083269, at *4 (N.D. Ohio Feb. 28, 2018); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.,* 45 F. Supp. 3d 706, 719 (N.D. Ohio 2014); *Hoffer v. Cooper Wiring Devices, Inc.,* No. 1:06CV763, 2007 WL 1725317, at *2 (N.D. Ohio, June 13, 2007); *Caterpillar Fin. Servs. Corp. v. Harold Tatman & Son's Enters.*, 50 N.E.3d 955, 966 (Ohio App. 2015).

Yet other courts have held that the combined claims are both abrogated by OPLA. For example, in *Meta v. Target Corp.,* 74 F. Supp. 3d 858 (N.D. Ohio 2015), the court held that a

12

plaintiff "may not carve out a common law product liability claim for economic loss … where … the facts underpinning [plaintiff's] common law claims constitute the same conduct that gives rise to the [OPLA] products liability claim." *Id.* at 864 (internal quotation omitted) (holding that because plaintiff's products liability claim for compensatory damages and economic losses was within the purview of OPLA he could not pursue a common law claim for economic losses). So, too, in *Mitchell v. Proctor & Gamble*, No. 2:09-CV-426, 2010 WL 728222, at *2 (S.D. Ohio Mar. 1, 2010), the court held that the plaintiff who alleged his injury "relates directly to [the] product," *id.* at *2, could "not separate out his claims from the purview of the OPLA simply by claiming only economic losses," *id.* at *4. Similarly, in *Hale v. Enerco Grp., Inc.,* No. 1:10 CV 00867-DAP, 2011 WL 49545 (N.D. Ohio Jan. 5, 2011), the court held that, because plaintiffs sought compensatory damages and economic losses and because plaintiffs' claims for negligent design and failure to warn sounded in product liability law, plaintiffs could not bring a claim for economic losses under the common law. *Id.* at *7.

As a preliminary note, it is unclear to the Court what economic losses plaintiff is pursuing. OPLA defines "economic loss" to be "direct, incidental, or consequential pecuniary loss, including, but not limited to, damage to the product in question, and nonphysical damage to property other than that product. Harm is not 'economic loss.'" Ohio Rev. Code Ann. § 2307.71(A)(2). However, the Court will proceed to analyze the argument with the assumption that plaintiff has suffered an economic loss.

If plaintiff sought only economic losses, then she could pursue a common law negligence claim. Ohio Rev. Code § 2307.79(A). But she seeks both compensatory damages and economic losses. The question before the Court is whether a plaintiff may seek both in a single action. The

Court agrees with the majority of courts addressing this issue, that a suit seeking both compensatory damages and economic losses may be bifurcated.

The argument against bifurcation is that the suits may be duplicative. If plaintiffs successfully recover compensatory damages from an OPLA claim, they may also recover economic losses. And they may then successfully recover economic losses from the common law claim. *See* Ohio Rev. Code § 2307.79(A); *Dates,* 2020 WL 3265537, at *2. But in a case like this one, where the plaintiff's claim for compensatory damages has been abrogated by OPLA and the plaintiff does not assert an OPLA claim, the Court has no concern about duplicative claims. Moreover, in Ohio, "a consumer's right to recover solely economic loss-damages is well-established" and "consumer plaintiffs may bring negligence claims for solely economic damages." *Huffman,* 961 F. Supp. 2d at 881–82. Accordingly, plaintiff may pursue a common law negligence claim for economic losses.

## IV. CONCLUSION

Because plaintiff no longer wishes to proceed with Counts II, IV, VI–XV, and XVI[6], those claims are dismissed.

With respect to plaintiff's claim sounding in negligence (Count I), to the extent defendants' motion for summary judgment concerns plaintiff's claim for common law negligence seeking compensatory damages, the motion is granted because the claims are abrogated by OPLA. To the extent defendants' motion for summary judgment concerns plaintiff's claim for common law negligence seeking economic losses, the motion is denied.

**IT IS SO ORDERED**.

Dated: September 21, 2020

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**

---

[6] Although the defendants did not move for summary judgment on the loss of consortium claim (Count XVI), the plaintiff has indicated that she will not be proceeding with that claim at trial. (Opp'n at 1254.)